```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MA CECILIA M. DELGADO, et al.,                   :
                                                 :
                        Plaintiffs,              :
                                                 :        12 Civ. 3113 (JMF)
        -v-                                      :
                                                 :        MEMORANDUM
JOSE B. VILLANUEVA, et al.,                      :        OPINION AND ORDER
                                                 :
                        Defendants.              :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/18/2013

JESSE M. FURMAN, United States District Judge:

Plaintiffs, seventeen Filipino immigrant workers, bring this action against a group of corporations and their individual owners and officers who recruited Plaintiffs for employment in the United States pursuant to the H-2B visa guest worker program. Plaintiffs bring claims under the Trafficking Victims Protection Act, 18 U.S.C. § 1590; the Alien Tort Statute, 28 U.S.C. § 1350; the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; and state law for fraud and negligent misrepresentation.[1] Defendants move to transfer the case to the Southern District of Florida due to improper venue here. (Mot. to Transfer Case (Docket No. 35)). Plaintiffs oppose Defendants' motion and request leave to amend their complaint. (Pls.' Opp'n (Docket No. 38)). For the reasons discussed below, Defendants' motion to transfer is granted. The Court defers decision on Plaintiffs' request for leave to amend their complaint to the transferee court.

---

[1] The Complaint also includes breach-of-contract claims, but Plaintiffs indicated in their opposition to Defendants' motion that they were withdrawing those claims. (Pls.' Opp'n 15). Accordingly, those claims are dismissed.

**BACKGROUND**

On a motion to transfer for improper venue, a court must accept all facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor, although the court may consider documents outside the pleadings "that the plaintiff knew of and relied on in bringing suit." *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 611 (S.D.N.Y. 2008); *see also Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 224 (2d Cir. 2011) ("We view all facts in the light most favorable to the plaintiff when determining whether the plaintiff has made a prima facie showing that venue is proper."). Accordingly, the following facts are drawn from the Complaint and, for purposes of this motion, are assumed to be true.

Plaintiffs are a group of Filipino immigrant workers, recruited for temporary employment in the United States pursuant to the H-2B guest worker visa program. (Compl. ¶¶ 2, 8). Plaintiffs allege that they were recruited by Defendants with false promises of fair pay and humane treatment. (*Id.* ¶ 2). Once Plaintiffs were in the United States, Defendants created an atmosphere of complete control by representing to Plaintiffs that they had strong relationships with Philippine and U.S. law enforcement and immigration officials. (*Id.* ¶¶ 32-33, 65-81). Thereafter, Defendants forced Plaintiffs to live in unsafe and overcrowded housing, illegally assigned them to work at job sites different from those stated on their visas, underpaid them, threatened them with arrest, deportation, and blacklisting, and withheld their immigration documents. (*Id.* ¶¶ 34-37, 86, 88, 91, 96-102, 107-14).

All seventeen Plaintiffs arrived in the United States between 2007 and 2009 on H-2B visas indicating that they would be working in Florida or South Carolina. (*Id.* ¶¶ 8, 41, 170). Although Plaintiffs were frequently transferred among various work sites, they were eventually assigned fairly steady work for periods of several months, to over a year at a time, in Florida or

South Carolina. (*Id.* ¶¶ 155-58, 173-76, 195-96, 198, 209-11, 233-34, 249, 267, 283-88, 303-06, 328, 346-47, 360-62, 371-72, 376, 391-92, 406-09, 423-26, 440-41, 446-51). Defendants failed to update Plaintiffs' immigration paperwork when they were moved among work locations, however, forcing Plaintiffs to work illegally. (*Id.* ¶ 42).

In May 2010, Defendants notified Plaintiffs that they would be transferred to work in New York City hotels. (*See, e.g.*, *id.* ¶¶ 134, 161, 179, 213, 250, 268). Defendants directed nine of the seventeen Plaintiffs to move to New Jersey in June 2010, and began organizing trips to New York City to familiarize these Plaintiffs with the city and to train them at a hotel where one Defendant worked. (*Id.* ¶¶ 138-39, 162, 164; Delgado Aff. ¶ 36 (Docket No. 39)). Defendants ultimately organized interviews for some of these Plaintiffs with New York City hotels. (Compl. ¶¶ 220, 237-40, 290-91, 293-95, 308-09, 352-53, 379-83, 396-97). Only four of the nine Plaintiffs living in New Jersey ever secured work in New York City, and their assignments lasted fewer than two weeks due to Defendants' inability to provide them with proper immigration documentation. (*Id.* ¶¶ 221-24, 292, 310-13, 398; Delgado Aff. ¶ 48). The other eight Plaintiffs never even moved to the New York area. (*See* Compl. ¶¶ 202-03, 254-60, 271-78, 298, 333-39, 363-66, 415-18, 432-35, 452-53).

In 2011, all seventeen Plaintiffs escaped Defendants' housing and employ. (*See, e.g.*, *id.* ¶¶ 168, 204, 226, 242, 260, 278, 321, 339, 354, 384, 401, 418, 435, 453).

## DISCUSSION

### A. Applicable Law

Defendants move to transfer venue pursuant to Title 28, United States Code, Section 1406(a), which requires a court to either dismiss a case brought in a district where venue is improper or "if it be in the interest of justice, transfer such case to any district or division in

which it could have been brought." Once venue is challenged, the burden of establishing proper venue rests with the plaintiff. *See, e.g.*, *Henneghan v. Smith*, No. 09 Civ. 7381 (RJH), 2011 WL 609875, at *2 (S.D.N.Y. Feb. 17, 2011). Where, as here, the Court has relied upon only the pleadings and affidavits and has not conducted an evidentiary hearing, a plaintiff need only make a *prima facie* showing that venue is proper. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

In this case, Plaintiffs rely on the "transactional venue" provision of the general venue statute, pursuant to which venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). (Pls.' Opp'n 7-8).[2] The Second Circuit has adopted a two-part test to determine whether venue under Section 1391(b)(2) is proper:

> First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to those claims have occurred in the district in question.

---

[2] RICO has its own venue provision, which provides that venue is proper in any district in which a defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965. It is supplemental to the general venue provision, so venue may be established for RICO claims pursuant to either venue provision. *See, e.g.*, *Prospect Capital Corp. v. Bender*, No. 09 Civ. 826 (HB), 2009 WL 4907121, at *2 n.7 (S.D.N.Y. Dec. 21, 2009); *Pardy v. Gray*, No. 06 Civ. 6801 (JBW), 2007 WL 1825200, at *3 (E.D.N.Y. June 21, 2007). Here, although Plaintiffs cited the RICO venue provision in the Complaint (Compl. ¶ 7), they made no argument relating to it in their opposition to Defendants' motion, relying exclusively on Section 1391(b)(2) instead. Accordingly, any argument that Section 1965 provides a basis for venue has been waived. *See Prospect Capital Corp.*, 2009 WL 4907121, at *2 n.7 (declining to consider venue under RICO venue provision where plaintiff identified it in complaint, but failed to address it in motion papers). In any event, even if Plaintiffs had not waived the argument, it would not affect the analysis or conclusions reached below. Even if Plaintiffs made a viable argument for venue over the RICO claims, the Court would decline to exercise pendent venue over their other claims, and would exercise its discretion to transfer the entire case pursuant to Section 1404(a).

4

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (internal citations, quotation marks, and alterations omitted).  The statute "does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred," as it "contemplates that venue can be appropriate in more than one district."  *Id.* (internal quotation marks omitted).  Nevertheless, it "does limit the forums available to plaintiffs," because "'the purpose of statutorily defined venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.'"  *Id.* (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979)); *see also, e.g.*, *Gulf Ins. Co.*, 417 F.3d at 357 (emphasizing that district courts "are required to construe the venue statute strictly" and thus must "take seriously the adjective 'substantial'").

Even if a plaintiff makes a *prima facie* showing of proper venue, a court may transfer a case *sua sponte* where such transfer would be "[f]or the convenience of parties and witnesses," and "in the interest of justice," so long as the case is transferred to another "district or division where it might have been brought."  28 U.S.C. § 1404(a); *see, e.g.*, *James v. Osbourne*, No. 11-CV-4182 (NGG) (CLP), 2012 WL 4849131, at *3 (E.D.N.Y. Apr. 18, 2012), *report and recommendation adopted*, 2012 WL 4849160 (E.D.N.Y. Oct. 11, 2012).  In weighing whether to transfer a case pursuant to Section 1404(a), a court must determine first "whether the case could have been brought in the transferee district" and, second, whether "transfer [is] in the interests of justice."  *Bossom v. Buena Cepa Wines, LCC*, No. 11 Civ. 6890 (VB), 2011 WL 6182368, at *1 (S.D.N.Y. Dec. 12, 2011).  The latter inquiry is guided by a non-exhaustive list of factors, including: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of

5

unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice.  *See, e.g.*, *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Larew v. Larew*, No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012).

As a general matter, "a plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." *Rush v. Fischer*, — F. Supp. 2d. —, No. 09 Civ. 9918 (JGK), 2013 WL 542641, at *10 (S.D.N.Y. Feb. 14, 2013); *see also Lykes Bros. Steamship Co. v. Sugarman*, 272 F.2d 679, 681 (2d Cir. 1959) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (internal quotation marks omitted)).  At the same time, "[t]here is no rigid formula for balancing" the factors and "no single one of them is determinative." *Larew*, 2012 WL 87616, at *3. "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

**B.  Analysis**

Applying these standards here, transfer to the Southern District of Florida is appropriate, if not required.  As an initial matter, venue in this District is plainly improper as to the eight Plaintiffs who did not move to New Jersey or even explore employment in New York City: Alberto, Ballesteros, Bautista, Escobido, Nipales, Sarmiento, Sibayan, and Yuson.  Put simply, these Plaintiffs have no connection whatsoever to this District, save for the fact that Defendants told them that they would be transferred to work at hotels in New York City. (*See* Compl. ¶¶ 202-03, 254-60, 271-77, 333-39, 363-66, 414-18, 432-35, 452-53).  An unfulfilled promise of employment in a district, however, is plainly not a close enough nexus to that district to support

venue under Section 1391(b)(2).  By contrast, Plaintiffs concede that venue for all Plaintiffs is proper in the Southern District of Florida.  (*See* Pls.' Opp'n 8). Accordingly, Defendants' motion to transfer venue must be granted as to these Plaintiffs.  *See, e.g.*, 28 U.S.C. § 1406(a) (noting that a district court "shall" dismiss or transfer "a case laying venue in the wrong division or district"); *see also* 14D Charles Alan Wright, Arthur R. Miller et al., Federal Practice and Procedure § 3807 (3d ed.) (noting that, when Section 1391(b)(2) is applied to multiple parties, the "transactional district must be proper for each of the parties," so that "the fact that a claim for some of the plaintiffs or against some of the defendants arose in a district [does] not make that district a proper venue for other parties as to whom the claim arose somewhere else").

The case for venue in this District as to the other nine Plaintiffs is only marginally better given their thin ties to New York, but the Court need not resolve the question of whether venue here is proper because, even if it were, the Court would exercise its discretion pursuant to Section 1404(a) to transfer venue to the Southern District of Florida.[3]  First, as Plaintiffs concede, there is no question that this case could have been brought in that District, as "a substantial part of the events or omissions giving rise to" all of Plaintiffs' claims occurred there. (Pls.' Opp'n 8).  Second, "even giving due deference to Plaintiff[s'] choice of forum, . . . the balance of convenience and justice weighs heavily in favor of [Defendants' proposed] forum." *Ohuche v. Allstate Prop. & Cas. Ins. Co.*, No. 11 Civ. 4905 (RJS), 2012 WL 2900530, at *3 (S.D.N.Y. July 12, 2012) (internal quotation marks omitted).

---

[3] Ordinarily, "[a] court may *sua sponte* transfer an action under 28 U.S.C. § 1404(a)" only "after giving both parties notice and an opportunity to be heard." *Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *36 (S.D.N.Y. Mar. 20, 2003), *reconsidered on other grounds sub nom.*, *Martinez v. Barasch*, No. 01 Civ. 2289 (MBM), 2004 WL 1555191 (S.D.N.Y. July 12, 2004).  Here, however, notice is unnecessary as Plaintiffs have already briefed the discretionary transfer factors in their opposition to Defendants' motion (Pls.' Opp'n 11-17), and thus had the opportunity to be heard and have "present[ed] their views" to the Court. *Barnet v. Elan Corp.*, 236 F.R.D. 158, 164 (S.D.N.Y. 2005).

In fact, the mandatory transfer of eight Plaintiffs' claims to Florida makes this an easy case for exercise of the Court's discretion under Section 1404(a).  The claims of the nine Plaintiffs with a plausible claim to venue here involve the same factual circumstances and legal issues, and many of the same witnesses, as the claims of the eight Plaintiffs that must be transferred to Florida.  To permit their case to go forward here while a nearly simultaneous case proceeds in Florida would lead to precisely "the wastefulness of time, energy and money that [Section] 1404(a) was designed to prevent."  *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960); *see also, e.g.*, *DISH Network, L.L.C. v. Am. Broad. Companies, Inc.*, No. 12 Civ. 4155 (LTS) (KNF), 2013 WL 1091318, at *3 (S.D.N.Y. Mar. 15, 2013) ("Numerous courts have recognized that transfer is appropriate when two cases involving the same issues are simultaneously pending in different district courts.") (citing cases).

Moreover, even on their own terms, the factors relevant to the Section 1404(a) inquiry favor transfer of the remaining nine Plaintiffs' claims.  First and foremost, the locus of operative facts for each claim plainly favors transfer, as the vast majority of the time Plaintiffs spent in Defendants' employ and presence was in the Southern District of Florida or the District of South Carolina — that is to say, not in this District — and the vast majority of the misconduct that Plaintiffs allege, including threats of arrest, deportation, or blacklisting; the use of American and Filipino officials to intimidate; the failure to pay proper wages; and the withholding of immigration documents, took place in Florida or concerned Defendants' alleged misrepresentations that Plaintiffs would be working in Florida.  (Compl. ¶¶ 67-106).[4]  This is

---

[4]   In their memorandum in opposition to Defendants' motion, Plaintiffs contend that the Complaint alleges that "during the time that defendants moved them to work as housekeepers in New York City hotels, defendants did not pay them the applicable federal minimum wage for all hours worked."  (Pl.'s Opp'n 15 (citing Compl. ¶ 586)).  That is not the case.  The paragraph cited alleges only generally that defendants violated the FLSA, and does not specify a location;

8

significant, as "the locus of operative facts is a primary factor in determining whether to transfer venue" and, "[a]long with the location of material witnesses," has "a bearing on where the center of gravity of the action rests." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (internal quotation marks omitted), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co.*, 599 F.3d 102.

Given the close nexus between Plaintiffs' claims and Florida, there is some basis to presume that relevant witnesses and evidence would be found there rather than here, *see, e.g.*, *Scott v. Branch Banking & Trust Co.*, No. 3:08-CV-357, 2008 WL 4279598, at *4 (E.D. Va. Sept. 18, 2008), but the Court can do no more than presume because Defendants failed to specify the key witnesses to be called, let alone what their testimony would cover, *see, e.g.*, *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550 (S.D.N.Y. 2008).[5]  In any event, it bears emphasizing that the events underlying Plaintiffs' claims span at least five far-flung jurisdictions — the Philippines, the Southern District of Florida, the District of South Carolina, the District of New Jersey, and the Southern District of New York.  Accordingly, no matter which court ultimately oversees this case, whatever witnesses exist in four other jurisdictions would likely be inconvenienced or beyond the immediate power of the relevant court to compel their attendance.  Further, it is plainly more convenient for witnesses to appear in one jurisdiction than in two, as would be required if the Court allowed some Plaintiffs' claims to remain here.

---

all allegations in the Complaint relating to the alleged failure to pay proper wages pertain to work Plaintiffs did in Florida or South Carolina.  (*E.g.*, Compl. ¶¶ 174, 195, 210, 232, 249, 267).

[5]     By contrast, Plaintiffs have identified several New York-based hotel employee witnesses who can "testify that they either negotiated with defendants . . . or discussed with plaintiff Delgado regarding defendants' contracts, and/or interviewed or hired some of the plaintiffs." (Pl.'s Opp'n 12).  The testimony of these witnesses, however, is not particularly material to Plaintiffs' claims beyond the bare fact that they were employed by Defendants.

Given the foregoing considerations, and the undisputed neutrality of the other relevant factors (*see* Pls.' Opp'n 13-14, 16), the Court finds that "notions of convenience and fairness" call for this case to be transferred. *D.H. Blair*, 462 F.3d at 106. Accordingly, to the extent that venue is proper in this District as to any of the seventeen Plaintiffs, the Court exercises its discretion pursuant to Section 1404(a) to transfer the entire case to the Southern District of Florida, where it may be tried as a single unit.

## CONCLUSION

For the reasons discussed above, Defendants' motion to transfer venue is GRANTED, and the Clerk of Court is directed to transfer this case to the Southern District of Florida. The Court leaves the question of whether Plaintiffs should be granted leave to amend their complaint for the transferee court.

SO ORDERED.

Dated: June 18, 2013
       New York, New York

                                                    JESSE M. FURMAN
                                                    United States District Judge